L. N. WILSON and others v. A. M. POWELL, Executor of MAHALA SHERRILL and others.

Where a solvent firm owed an estate, of which one of the members of said firm was the executor, an ante war debt of $1,400, which amount said member of the firm paid to himself as executor, in Confederate currency, in December, 1863, when he knew it could not avail to pay a certain debt against the estate of nearly like amount, and the money became worthless on his hands: *Held*, that the executor was chargeable to the legatees with the amount of said debt.

This was a PETITION for an *Account and Settlement*, commenced in the Probate Court of CATAWBA County, and thence transferred to the Superior Court, and there heard on exceptions to the report of the referee, before FURCHES, J., at Spring Term, 1876.

The plaintiffs are the next of kin of the testatrix of the defendant. In their petition they allege, among other things, that Mahala Sherrill died in 1863, leaving a large amount of property, both real and personal, which, under her will, came into the hands of the defendant as her executor; that he has retained the same in his hand ever since his qualification, refusing to settle, &c., and praying for an account.

The defendant denied the chief allegations of the petition, which seek to charge him with certain amounts, and for which he is not liable.

It was referred to the Clerk, who made a report, to which the plaintiffs filed numerous exceptions, and which with all the case was transferred to the Superior Court. FURCHES, J., sustained the first and second exceptions, (fully set out in the opinion of Justice READE,) so far as to charge the defendant with a note due the estate by Powell & Long. Upon these exceptions the principal and only ones considered on the argument in this Court, his Honor found the following facts:

That Geo. F. Davidson, as trustee, held a note against the estate of the defendant's testatrix, for $1,400, due before the

war ; that the note of Powell & Long was given in renewal of a note due before the war. That Davidson, in August, 1863, informed Powell, the executor, that he "held a note of $1,400 against the estate of his testatrix, and that it must be arranged." That sometime after that and before the month of December, 1863, he saw the defendant, who offered to pay him the $1,400 note, Confederate currency, and he, Davidson, declined to receive the same; and told the executor that he could not take Confederate money, unless those to whom the same was going would receive it from him. That after this conversation, and in the month of December, 1863, Powell, the executor, sent him, Davidson, $1,400 in Confederate currency, to be applied to the payment of said note ; that he declined to receive it, and it was returned to the defendant, who has the same now, having kept it separate from his other money.

The executor and defendant in this petition is the same person as that composing the firm of Powell & Long, and was then, and is now, perfectly solvent.

His Honor also found from the evidence, that Confederate currency was generally received by prudent business men, in the neighborhood of the defendant, in December, 1863, in payment of well secured ante-war debts.

To the above ruling and finding, the defendant Powell excepted. There was no objection to the ruling of his Honor, on any of the other exceptions; and the report being reformed according to the exceptions allowed, the plaintiffs had judgment according to the report as reformed.

From this judgment, defendant appealed.

*Folk & Armfield* and *M. L. McCorkle,* for appellant.
*Cobb* and *Hoke,* contra.

READE, J.   In order to show that he was not to blame for receiving Confederate currency, in December, 1863, in

payment of an ante war note which he and his partner owed his testatrix, the defendant alleges that at that time Confederate money was current among business men in valuable transactions and in payment of ante-war debts; and, therefore, he says he received the money and filed it away, and has it now—worthless. In avoiding Scylla he has fallen on Charibdis; for if it was current money, why did he file it away? Why not pay debts with it?—why not pay legacies? If he had received gold would he have been justified in hiding it where it could never be found? Take it either way: It was bad money when he received it—then he is liable for receiving it; it was good money when he received it—then he is liable for hiding it.

There is another ground upon which the defendant is liable: He owed his testatrix $1,400, and his testatrix owed Davidson about the same amount; both were ante-war debts. In August, 1863, Davidson asked him for payment. Now, why did he not pay Davidson then? Why did he not make his note pay Davidson's note? Whatever currency Davidson demanded, why did he not pay off his note in that currency, and then pay Davidson? In August Davidson told him he would not receive Confederate money unless his *cestui que trusts* would take it from him. Afterwards and before December, 1863, Davidson told him he would not receive it at all. And yet after that, in December, the defendant pretends that he paid off his own note to himself, as executor, in Confederate currency to get money to pay off Davidson. And so he paid off his own note with trash and left Davidson's stand against the testator's estate. This is not just, and will not be allowed. The defendant will be charged with the full amount of his note with interest.

There is no error. This will be certified.

PER CURIAM.                    Judgment affirmed.